ADAMS v NEW YORK, L. E. & W. R. CO.

(Supreme Court, General Term, Fifth Department. January 18, 1893.)

RAILROADS—INJURY TO PERSON AT STATION—CROSSING TRACK.

One who undertakes to cross a railroad track to a station at a point where there is no walk or highway assumes all risk of accident, and is not entitled to recover, even though this may have been the usual point of crossing for himself and others.

Motion for new trial on exceptions.

Action by Orrin R. Adams against the New York, Lake Erie & Western Railroad Company. Plaintiff, having been nonsuited, moves for a new trial on a case and exceptions taken at the circuit, and ordered to be heard at the general term in the first instance. Motion denied. Judgment for defendant.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

Eli. Soule, for plaintiff.

James H. Stevens, for defendant.

MACOMBER, J. This action was brought to recover damages for personal injuries received by the plaintiff in a collision with the defendant's train at Canisteo, N. Y., on the 25th day of September, 1889. At 7 o'clock in the morning on that day the plaintiff went to the railroad station of the defendant to obtain the numbers of the cars which he was to unload, etc. There are two main tracks operated by the defendant through this village, the southern track being for the passage of trains to the east, and the northern track for the passage of trains to the west. The plaintiff's place of residence, which was a sort of an hotel or restaurant, kept by him, was located 24 feet north of the north track. From this building, at right angles with the railway tracks, a plank walk extended, leading down from the plaintiff's house to and across the tracks. There is evidence to show that the railway company or its agents, from time to time, repaired or relaid the plank across its tracks at this point; but whatever was done in that regard by them was to carry the walk leading down from the hotel across the tracks at right angles. There was a footpath leading from a highway still further north to and along the side of this hotel, which, in front of the building, turned a few feet to the east, to join the plank walk leading down from the hotel to the tracks. The plaintiff was entirely familiar with the locality. He was a man, at the time of the accident, 52 years of age, and knew the details of the operation and the running of the defendant's trains through this village. His testimony shows that, as he came down from the hotel to go to the railway station located on the south side of the tracks, he, instead of crossing the tracks at right angles upon the planking, took a diagonal course over them from his own walk southwesterly to the platform.

of the railway station, a distance of about 62 feet. The two tracks were each of the usual width, and were 8 feet apart. The plaintiff testified that this was his usual course of going to the station. It was also shown that others were in the habit of taking this course to and from the station. After transacting his business at the railway station, the plaintiff started to return to his tavern, in the same way that he had come. A mixed train was then standing on the south track, and was parted at or very near the east end of the railway station, for the purpose, as the plaintiff testified, of permitting passengers to go to and from a train which was about that time due on the north track from the east. He passed over the south track. He testified, further, that, when between the two tracks, he looked to the east, to see if a train then about due was coming, and then to the west, to see if one of his hired men whom he expected was coming up the track. He had no reason, as he said, to believe that the train was coming from the west, but had the best of reasons to be on his guard for a train from the east. From where he attempted to cross the north track, which was near the east end of the railway station, there was an unobstructed view to the east. The plaintiff, however, said that he could see to the east not more than about half-way to a street known as "Depot Street," (which is shown to be about 560 feet distant,) on account of a slight fog which then existed; but, according to his own testimony, he could see clearly enough to the east a distance of about 260 feet, while he stood between the two tracks. He passed upon the north track, and was there struck by the locomotive, and was rendered unconscious for a while by the blow, receiving some considerable personal injuries.

It hardly needs the citation of the authorities on the subject generally to show that the plaintiff cannot maintain this action. There are two insurmountable obstacles in the way of his recovery. The first is, that, when he undertook to pass over the railway tracks at a point where there was no walk or highway, he took upon himself all the risks of that hazardous enterprise. It matters not that he testifies that this was his and others' usual way of going to the station. It was not the way he should have taken to go or to come from the station to his place of abode. He was not upon a railway crossing, either public or private. No pretense is made that there was any recklessness or wantonness on the part of the persons operating the train in not trying to avoid a collision with him. On the contrary, aside from the claim made that the bell was not rung or the whistle sounded, there is no evidence to show that this train was not operated in a careful and prudent manner, as trains are ordinarily operated. But were the case otherwise, and had the plaintiff in fact been pursuing his course over a walk constructed for pedestrians across the track, he still could not recover, for the reason that he did not pursue his course in a prudent and careful manner. His own testimony leaves him in the plight of a person who, probably being intent on ascertaining whether his hired man was coming from the west, omitted the ordinary precautions against collision with a train which he knew might be coming from the east. We think that the disposition made of the case at the circuit was the only one open to the court, and

that, consequently, the motion for a new trial should be denied, **and** judgment ordered for the defendant on the nonsuit.

Plaintiff's motion for a new trial denied, with costs, and judgment ordered for the defendant on the nonsuit.   All concur.